UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MOMENTA PHARMACEUTICALS, INC. and SANDOZ INC., Plaintiffs, | |
| v. | Civil Action No. 11-11681-NMG |
| AMPHASTAR PHARMACEUTICALS, INC., INTERNATIONAL MEDICATION SYSTEMS, LTD. and WATSON PHARMACEUTICALS, INC., Defendants. | |

**PLAINTIFFS MOMENTA PHARMACEUTICALS, INC. AND SANDOZ INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR EXPEDITED DISCOVERY**

On September 19, 2011 the United States Food and Drug Administration approved Amphastar Pharmaceuticals, Inc.'s abbreviated new drug application for generic enoxaparin sodium. That same day Watson Pharmaceuticals, Inc. issued a press release stating that the companies would launch the generic enoxaparin product in the fourth quarter of 2011.[1] On September 21, 2011, Plaintiffs sued Amphastar, International Medication Systems, Ltd., and Watson (collectively, "Defendants") for patent infringement. Today, Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction to keep Defendants from launching their infringing enoxaparin product.

By necessity Plaintiffs relied on publicly available information about Defendants' product in support of their Motion for a Temporary Restraining Order and Preliminary Injunction. The present motion seeks narrowly tailored expedited discovery directly from Defendants to confirm Plaintiffs' infringement allegations and entitlement to injunctive relief.

Absent the requested discovery necessary to support Plaintiffs' request for injunctive relief, Plaintiffs will suffer substantial and irreparable harm if Defendants are able to launch their infringing product into the enoxaparin market.

## I. THE FACTS

Plaintiffs incorporate by reference all of the facts as alleged in support of their Motion for a Temporary Restraining Order and Preliminary Injunction. Plaintiffs provide a brief summary here for the Court's convenience.

In 2003, Plaintiffs partnered in the development of a generic version of enoxaparin, a low molecular weight heparin used to prevent or retard blood clotting. On July 23, 2010, the United Stated Food and Drug Administration ("FDA") approved Plaintiffs' abbreviated new drug application ("ANDA"), finding that Plaintiffs' product met the "sameness" requirements with Lovenox®, Sanofi-Aventis' brand name version of enoxaparin. Plaintiffs immediately began selling their generic enoxaparin product. They have had over $1.2 billion in sales since approval.

Amphastar Pharmaceuticals, Inc. ("Amphastar") and International Medication Systems, Ltd. ("IMS") are making or will imminently be making, a generic version of enoxaparin by a process that infringes Momenta's U.S. Patent Nos. 7,575,886 and 7,790,466. Defendants plan to sell the infringing products throughout the United States in violation of 35 U.S.C. § 271(a) and (g). Further, Amphastar and Watson Pharmaceuticals, Inc. ("Watson") have been contacting Plaintiffs' customers indicating that their entry on to the enoxaparin market is imminent – indeed, the fourth quarter begins October 1, 2011.

To obtain FDA approval, Amphastar had to prove that its generic enoxaparin product met FDA requirements for "sameness" with Lovenox®. As part of securing FDA approval, Amphastar and IMS necessarily have included certain release testing procedures required by the

[1] *See* Watson press release, Compl. Ex. C.

FDA to ensure that each batch of the generic drug has the required structural characteristics of enoxaparin. Two separate and important enoxaparin release tests are covered by Momenta's patents. Given the FDA approval of Defendants' generic enoxaparin product, it is highly likely that Defendants have used, or are using, Momenta's patented methods to make the enoxaparin product that they plan to launch in the fourth quarter of 2011.

If Defendants are allowed to launch their infringing product, Momenta and Sandoz will suffer irreparable harm. When Watson announced Amphastar's approval and Defendants' plans to launch the product, Momenta's stock plummeted by more than 30% in a single day, resulting in a nearly $300 million loss of market capitalization. The investment community immediately downgraded Momenta and questioned the inherent value of its core technology. Momenta's reputation as an innovator is at stake. Moreover, if Defendants are allowed to launch, it will have an immediate and permanent impact on the enoxaparin market, resulting in substantial price erosion and loss of market share. Even if Defendants were subsequently removed from the market, it is uncertain whether Sandoz could ever recover the lost pricing power and there is no way to calculate the impact to customer goodwill if Sandoz attempts to raise prices.

By the present motion, Momenta and Sandoz seek narrowly focused, expedited discovery of facts and information that go to the core infringement and irreparable harm allegations. Specifically, Plaintiffs request immediate production of:

1. Defendants' generic enoxaparin ANDA, all filed amendments to the ANDA, and any Drug Master File;

2. All communications between Defendants and the FDA relating to the ANDA;

3. Certain manufacturing records (including certificates of testing and/or certificates of analysis) for each batch of generic enoxaparin that Defendants produced on or after August 18, 2009 (the date that the first of Momenta's patents issued) in preparation for a commercial launch of their generic enoxaparin product; and

4. Documents sufficient to describe Defendants' plans for launch and distribution of commercial quantities of generic enoxaparin in the United States, including anticipated launch dates.

Momenta and Sandoz request leave to serve the Request for Production of Documents attached as **Exhibit A.** Plaintiffs also ask the Court to shorten to fifteen days the time for Defendants to respond to the discovery and produce the specified documents. Plaintiffs acknowledge the proprietary and confidential nature of the requested information and are prepared to immediately enter into a confidentiality agreement and protective order.

## II. ARGUMENT

Under Rule 26(d)(1) of the Federal Rules of Civil Procedure, a party must show good cause to obtain expedited discovery before the Rule 26(f) Conference. Courts typically employ one of two tests to evaluate whether good cause exists for expedited discovery: (1) a four-part inquiry, akin to a preliminary injunction analysis, articulated in *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982); or (2) the "reasonableness of the request in light of all the surrounding circumstances." *Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd.*, 765 F. Supp. 2d 87, 89 (D. Mass. 2011) (Gorton, J.). The First Circuit has not adopted either test, though this Court has previously applied the reasonableness standard.[2] *Momenta Pharms.*, 765 F. Supp. 2d at 89. Where, as here, a preliminary injunction is pending, "it makes sense to examine the discovery request . . . on the entirety of the record to date and the reasonableness of the request in light of

[2] Nonetheless, Plaintiffs would be entitled to limited expedited discovery under the four-part test as outlined in *Notaro v. Koch*. *Notaro v. Koch*, 95 F.R.D. at 405. Factors relevant to the *Notaro* test are: (1) irreparably injury; (2) probability of success on the merits; (3) connection between expedited discovery and the avoidance of irreparable injury; and (4) evidence that injury will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. As demonstrated in Plaintiffs' Motion for Preliminary Injunction, Plaintiffs are both likely to succeed on the merits and likely to suffer irreparable harm absent preliminary injunctive relief. Since Plaintiffs are seeking limited expedited discovery to aid them in definitively proving that they are entitled to preliminary relief, Plaintiffs risk significant irreparable harm should this motion be denied. Further, the expedited discovery requested is extremely narrow and easily accessible to Defendants. Thus, any minimal burden to Defendants in responding to Plaintiffs' limited discovery is far outweighed by the risk of irreparable harm to Plaintiffs.

all of the surrounding circumstances." *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000); *see Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002).

**A. <u>Legal Standard</u>**

Under the "reasonableness" analysis, "[g]ood cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc.*, 208 F.R.D. at 276. In determining whether good cause exists, courts frequently consider factors analogous to those required in granting a motion for preliminary injunction. *McMann v. Doe*, 460 F. Supp. 2d 259, 265 (D. Mass. 2006). These factors include: (1) purpose for the discovery; (2) ability of discovery to preclude irreparable harm; (3) movant's likelihood of success on the merits; (4) burden of expedited discovery on non-movant; and (5) degree of prematurity. *See Momenta Pharms.*, 765 F.Supp. 2d at 89. Courts also consider: (6) whether a preliminary injunction is pending; and (7) the breadth of the requests propounded. *American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009). "[C]ourts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition." *Semitool, Inc.*, 208 F.R.D. at 276 (citing *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97-civ-3841-RWS, 1997 WL 639037 at *20 (S.D.N.Y. Oct. 14, 1997)).

**B. <u>Plaintiffs are entitled to limited expedited discovery to definitively prove their case for injunctive relief</u>**

In *Momenta Pharms., Inc. v. Teva Pharms., Indus. Ltd.*, this Court denied Plaintiffs' motion for expedited discovery holding that the motion was premature because Teva had not released a generic enoxaparin product, Plaintiffs had not demonstrated irreparable harm, and Plaintiffs had not filed a motion for preliminary injunction. *Momenta Pharms.*, 765 F. Supp. 2d

at 89. Each of the elements that the Court found lacking in *Momenta v. Teva* is unquestionably present here: (a) Amphastar has FDA approval; (b) Amphastar and Watson have indicated that they intend to launch their product in the fourth quarter (which begins October 1), causing Plaintiffs irreparable harm through loss of reputation, goodwill, and price/market share erosion; and (c) Plaintiffs have filed a Motion for a Temporary Restraining Order and Preliminary Injunction. Expedited discovery motions are routinely granted where, as here, a preliminary injunction motion is pending and the discovery is limited in scope, will allow the Court to reach the core issues more quickly and imposes minimal burden on the opposing party. *See, e.g., Wheeler v. HXI, LLC*, 2010 WL 3023518 at *3; *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1049 (N.D. Iowa 2008).

As set forth fully in Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, Plaintiffs are likely to succeed on the merits of their infringement claims. To secure FDA approval Amphastar had to demonstrate sameness with Lovenox®. To demonstrate sameness Amphastar and IMS will almost assuredly have included Momenta's patented methods in their manufacturing process. Plaintiffs have gathered all the information they could from publicly available sources; now they need to confirm the Defendants' infringing process with this narrowly focused discovery. Additionally, absent a preliminary injunction preventing Defendants from launching their infringing generic enoxaparin product, Plaintiffs will suffer immediate and irreparable harm in the market.

### C. <u>Requested expedited discovery is narrowly tailored, easily obtainable, and minimally burdensome to Defendants.</u>

A request for expedited discovery should be allowed when the scope of discovery is narrow and central to a preliminary injunction motion, and the burden on the non-movant is modest. *See Wheeler,* 2010 WL 3023518 at *2. Where the discovery request "is both

'particularized' and 'necessary . . . to prevent undue prejudice' to plaintiffs" courts often grant the expedited request. *In re Websecure, Inc. Secs. Litig.*, No. 97-10662-GAO, 1997 WL 770414 at *4 (D. Mass. Nov. 26, 1997) (internal citations omitted).

The discovery requested by Plaintiffs is narrow, focused, and limited as much as possible to ease any burden on Defendants. Plaintiffs seek production of:

1. Amphastar's ANDA, including amendments to the ANDA, and any Drug Master File for enoxaparin. The FDA requires Defendants to disclose in their ANDA and DMF the processes Defendants use to manufacture generic enoxaparin.

2. Amphastar's correspondence with the FDA regarding its ANDA. These documents will contain information concerning Defendants' manufacturing and release testing methods.

3. Batch records (including certificates of testing and/or certificates of analysis) for any batch of generic enoxaparin that has been produced, in whole or in part, by or for Defendants since August 18, 2009. These documents will disclose the details of any release testing that Defendants have conducted and will allow the Court to determine whether Defendants' enoxaparin was manufactured subsequent to the date that Momenta's '886 patent issued.

4. Documents sufficient to describe Defendants' plans for launch and distribution of commercial quantities of generic enoxaparin in the United States, including anticipated launch dates.

This limited, early discovery will only minimally burden Defendants. This is not a request for discovery that should require comprehensive and expensive document collection efforts. To the contrary, by virtue of the FDA requirements, the requested documents are necessarily readily accessible. *See Semitool, Inc.*, 208 F.R.D. at 277. Defendants almost certainly maintain separate regulatory files with their ANDA, Drug Master File, and FDA correspondence. They will exist in electronic form in Defendants' regulatory files allowing them to be located and produced with limited effort. Similarly, the requested manufacturing records and launch plans should be in readily accessible locations. The time period as to which batch records are requested – August 2009 to the present – also is as limited as possible.

The expedited discovery is necessary for Plaintiffs to protect themselves from irreparable harm and protect their patent rights. Given Defendants' imminent launch and the substantial irreparable harm it will create, Plaintiffs plainly have an "urgent and compelling need for the requested discovery." *Momenta Pharms.*, 765 F. Supp. 2d at 90.

## III. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Limited Expedited Discovery and order Defendants to respond to the First Requests for Production of Documents and Things within fifteen days.

Respectfully submitted,

MOMENTA PHARMACEUTICALS, INC. and
SANDOZ INC.,

By their attorneys,

/s/ Courtney M. Schou
Robert S. Frank, Jr. (BBO No. 177240)
*rfrank@choate.com*
Eric J. Marandett (BBO No. 561730)
*emarandett@choate.com*
Jessica Gan Lee (BBO No. 670970)
*jlee@choate.com*
Courtney M. Schou (BBO No. 671104)
*cschou@choate.com*
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000

*Attorneys for Plaintiff*
*Momenta Pharmaceuticals, Inc.*

- and -

Sarah Chapin Columbia (BBO #550155)
*scolumbia@mwe.com*

Melissa Nott Davis (BBO #654546)
*mndavis@mwe.com*
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA 02109
Tel.: (617) 535-4000
Fax: (617) 535-3800

- and -

Thomas P. Steindler (*pro hac vice pending*)
*tsteindler@mwe.com*
MCDERMOTT WILL & EMERY LLP
600 13th Street, NW
Washington, D.C. 20005-3096
Tel.: (202) 756-8254
Fax: (202) 756-8087

Dated: September 30, 2011

*Attorneys for Plaintiff Sandoz Inc.*

**CERTIFICATE PURSUANT TO LOCAL RULE 7.1**

I hereby certify that counsel for Plaintiffs has conferred with counsel for Defendants in a good faith attempt to resolve or narrow the issue presented by this motion, and that Defendants do not assent to this motion.

/s/ Courtney M. Schou
Courtney M. Schou

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those non-registered participants (if any) on September 30, 2011.

/s/ Courtney M. Schou
Courtney M. Schou