# United States District Court
# District of Massachusetts

MOMENTA PHARMACEUTICALS, INC.
AND SANDOZ INC.,
      Plaintiffs,

v.                                    CIVIL ACTION NO. 11-11681-NMG

AMPHASTAR PHARMACEUTICALS, INC.,
INTERNATIONAL MEDICATION
      SYSTEMS, LTD.,
ACTAVIS, INC. AND
WATSON PHARMA, INC.,
      Defendants.

*MEMORANDUM AND ORDER ON PLAINTIFFS' RE-FILED EMERGENCY MOTION FOR A FINDING OF CONTEMPT AND SANCTIONS AGAINST DEFENDANTS FOR THEIR WILLFUL VIOLATION OF COURT ORDERS (#392)*[1]

---

[1] The motion was referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A) on March 26, 2013.

COLLINGS, U.S.M.J.

## I. Introduction

As limned in its Reply (#489), the sanctions which Momenta seeks from Amphastar are (1) "a finding that the accused Amphastar procedures meet the limitations of the asserted patent claims" and (2) "an award of Momenta's expenses caused by Amphastar's failure to comply with the two orders, and/or an award of Momenta's legal fees...". (#489 at 2) These sanctions are sought pursuant to Rule 37(b)(2), Fed. R. Civ. P., and not on the basis of any finding of civil or criminal contempt. (*Id.*) After a review of the record and after hearing, the Court grants the motion as to request (2) but does not, in the circumstances of this case, believe that the imposition of the sanction sought in request (1) would be a "just order[]". Rule 37(b)(2)(A), Fed. R. Civ. P.

## II. Momenta's Requests and the June 12 and 27, 2012 Orders[2]

The June 12th and June 27th Orders dealt with Momenta's motion to compel production of certain documents, specifically documents in response to Requests ## 5, 7, 11, 12 and 13 of Momenta's second request for production

---

[2] Henceforth, these orders shall be referred to as the "June 12th Order" and the "June 27th Order."

of documents. (#417-2) Those requests and the defendants' responses[3] read as follows:

> **REQUEST NO. 5:**
>
> The Abbreviated New Drug Application ("ANDA"), including any amendment(s) thereto, filed by any Defendant with the FDA seeking approval to sell a generic enoxaparin product in the United States.
>
> **RESPONSE TO REQUEST NO. 5:**
>
> Amphastar objects to this request on the grounds that the ANDA is a voluminous document, the vast majority of which contains highly confidential business information that is unrelated to the methods claimed in the patents in suit and, thus, to that extent this request seeks information that is neither relevant to any of the issues in this case nor likely to lead to the discovery of admissible evidence. Amphastar reserves the right to redact such irrelevant, highly confidential information under the terms of the Protective Order in this case. Amphastar further objects to this request on the ground that it is duplicative of discovery previously produced and identified to Plaintiffs. Specifically, Amphastar has previously produced the relevant sections of its ANDA to Plaintiffs. Though irrelevant, Amphastar is conducting a further review of its ANDA and will supplement its production within a matter of days of this written response. This request does not seek documents within the possession, custody or control of Defendants Watson or Watson Pharma.

---

[3] An Amended Response (#508) was filed by Amphastar but it related only to Request #8 which was not the subject of the Court's June 12th Order.

REQUEST NO. 7:

All communications with the FDA regarding a generic enoxaparin ANDA and/or any related DMF.

RESPONSE TO REQUEST NO. 7:

Defendant Amphastar objects to this request on the ground that the overwhelming majority of all communications with the FDA regarding Amphastar's generic enoxaparin ANDA involve highly confidential information that has no relevance to any issue in this case. To that extent, this request seeks information that is neither relevant to any of the issues in this case nor likely to lead to the discovery of admissible evidence. Amphastar reserves the right to redact all such communications under the terms of the Protective Order. Amphastar further objects to this request on the ground that it is duplicative of discovery previously provide [*sic*] and identified to Plaintiffs. Subject to the foregoing objections, Amphastar is conducting a further review of its ANDA and will supplement its production within a matter of days of this written response. This request does not seek documents within the possession, custody or control of Defendants Watson or Watson Pharma.

REQUEST NO. 11:

All documents concerning any release testing conducted in connection with the manufacture of a generic enoxaparin including, without limitation, any release testing procedures or protocols.

RESPONSE TO REQUEST NO. 11:

Amphastar objects to this request on the ground that it

is duplicative of discovery previously provided to Plaintiffs and, thus, is unnecessary and unduly burdensome. This request does not seek documents within the possession, custody or control of Defendants Watson or Watson Pharma.

**REQUEST NO. 12:**

All documents concerning any method for determining the presence, amount, and/or saccharide sequence, of any tetrasaccharide component of a generic enoxaparin including, without limitation, by using any type of high performance liquid chromatography ("HPLC").

**RESPONSE TO REQUEST NO. 12:**

Amphastar objects to this request on the ground that it is overly broad and, thus, seeks information that is neither relevant to the issues in this case nor likely to lead to the discovery of admissible evidence. Only the '466 patent-in-suit relates to tetrasaccharide sequencing testing. The '466 patent first issued on September 7, 2010. As a matter of law, any testing that might fall within the scope of this request, prior to September 7, 2010, would be irrelevant since any such testing could not give rise to a claim for patent infringement. Further, Amphastar's ANDA was not approved until September 19, 2011. Any testing that might fall within the scope of this request prior to September 19, 2011, or would be for purposes of submitting information to the FDA for drug approval, would be irrelevant since any such testing cannot constitute an act of infringement pursuant to 35 U.S.C. 271(e)(1). This request does not seek documents within the possession, custody or control of Defendants Watson or Watson Pharma.

**REQUEST NO. 13:**

All documents concerning any method for determining the presence, amount, or location of a 1,6 anhydro ring structure in any poly(oligo)saccharide(s) contained in generic enoxaparin.

**RESPONSE TO REQUEST NO. 13:**

Amphastar and IMS object to this discovery request on the grounds that the word "poly(oligo)saccharide(s)" is unintelligible. Amphastar and IMS further object to the use of the term "location" on the grounds that, within the context of the request, it is vague and ambiguous. Amphastar and IMS further object to this request for "all documents concerning any method" as unreasonably overly broad since it has already been established in this action that Amphastar practices the USP <207> method for 1,6-AS analysis and that method is known to Plaintiffs. In that regard there is no further need for testing discovery relating to 1,6-AS analysis. Amphastar and IMS further object to this request on the ground that it is duplicative of discovery previously produced and identified to Plaintiffs. Amphastar and IMS have previously produced the documentation establishing that Amphastar uses the USP<207> method for release testing and any additional discovery on this issue is duplicative and unnecessary. This request does not seek documents within the possession, custody or control of Defendants Watson or Watson Pharma.

#398-5.

One of Momenta's complaints was that Amphastar had redacted relevant portions of the documents it had produced in response to these requests. One

part of the June 12th electronic order issued by the Court dealt with that issue and read as follows:

> After hearing and a review of the numerous papers filed in connection with the motion, the Court allows the motion to the extent that the defendants are ORDERED, pursuant to Rule 37, Fed. R. Civ. P., to produce to counsel for the plaintiffs all documents sought by Requests ##5, 7, 11, 12 and 13 of Plaintiff's Second Set of Document Requests _on or before the close of business on June 19, 2012._ Any pages of documents previously produced in redacted form in response to these requests must be produced in unredacted form.

Another issue between the parties was the procedure by which the ANDA was to be produced to counsel for Momenta. A portion of the June 12th Order attempted to cajole counsel into agreeing to a protocol. That part of the June 12th Order read as follows:

> With respect to the complete ANDA (Request #5), the Court suggests that perhaps counsel can agree on a more expeditious method of dealing with those portions of the ANDA which the defendants claim are not relevant and contain highly confidential trade secret information. The suggestion is initially that defendants' counsel allow one or two of plaintiff's counsel to view the complete document (of which a copy would not be made) together with a redacted version which does not contain the purported irrelevant highly confidential trade secret information which the defendants would produce pursuant to the within order. In that manner, plaintiff's counsel can

> determine for themselves whether the material the defendants wish to withhold is material they consider relevant. Any material which plaintiff's counsel concedes is not relevant would not be produced and plaintiff's counsel would not have a copy of it. Any material which the plaintiff considered relevant and discoverable would be tagged and brought before the Court for resolution.

The Court, in a further effort to resolve the issue, held a telephone conference on June 27th, after which the Court issued the June 27th electronic order, *viz:*

> Counsel for defendants represents that all documents which have been ordered produced pursuant to the Court's Order of June 12, 2012 which have not yet been produced in unredacted form are in the ANDA, the ANDA amendments and the correspondence with the FDA which comprise 78 volumes. After considerable colloquy with counsel, the Court ORDERS the following: (1) The defendants shall produce the complete original ANDA application in an electronic form (approximately 2,000 pages) to counsel for the defendants by cob July 5, 2012; (2) on or before July 5, 2012, counsel for the defendants shall physically transport to plaintiffs' counsel's office in Boston a complete copy of all amendments to the ANDA together with a copy of same which contains the redactions which counsel for the defendants proposes in order to protect highly confidential and proprietary information; (3) counsel for the plaintiffs shall review both the redacted and unredacted copies and make a determination as to whether he or she agrees to the redactions; (4) as to any redactions to which plaintiffs' counsel agrees, the unredacted ANDA will be retained by defendants' counsel; (5) as to any redactions which are disputed,

plaintiffs' counsel shall make a record identifying the page(s) and paragrph(s) [*sic*] or line(s) redacted and counsel for the defendants shall insure that the unredacted portions are brought to the Court at a hearing to determine whether or not the redactions shall stand. At the conclusion of this inspection, counsel for the parties shall attempt to reach agreement as to what correspondence with the FDA is sought and what correspondence is not sought. (Hopefully what will be sought will be substantially less than the 78 volumes) Thereafter, the defendants shall produce what correspondence plaintiffs seek. In the Court's view, this process, if undertaken in good faith, will resolve the dispute as to document production raised by the Court's Order. Nonetheless, the Court remains available to hear any disputes.

### III. Amphastar's Violation of the Two Orders

### A. Failure to Produce Documents re: Testing on Lots of Enoxaparin

The June 12th Order required, *inter alia,* production by June 19th of any and all documents responsive to Request #11, i.e., "[a]ll documents concerning any release testing conducted in connection with the manufacture of a generic enoxaparin." Amphastar repeatedly denied in its papers and at the June 4, 2012 hearing that there was any such testing between September, 2011 and January, 2012, despite a vigorous challenge by the plaintiffs. Amphastar's attorney went so far as to declare that plaintiffs' counsel was "...engaging in rank speculation that documents do exist. He's wrong." (#253 at 38-9)

Amphastar's counsel's representations were false, and Amphastar did not produce the documents responsive to Request #11 for that time period by June 19th. In fact, they were not produced until later. The Court had warned Amphastar's counsel that if Amphastar represented that requested documents did not exist after a reasonable search had been conducted and it later turned out that the documents did, in fact, exist, sanctions would be in order. (#253 at 22)

The June 12th Order required Amphastar to produce all documents responsive to Requests # 11 by June 19th; Amphastar failed to produce documents for the period from September, 2011 to January, 2012 and therefore disobeyed the June 12th Order. The imposition of sanctions is fully justified.

### B. *The Alleged Failure to Produce Unredacted Documents*

The June 12th Order specifically ordered Amphastar to produce unredacted copies of documents previously produced in redacted form, and

to do so by June 19th. Amphastar disobeyed the order. As an example, Bates ## 002471 and 002472 had substantial redactions; unredacted pages were simply not produced. Amphastar's argument that these were testing documents and subject of another motion is utterly frivolous; the pendency of some other

motion in no way excused Amphastar from complying with the June 12th Order. The other motion dealt with documents which had **not** yet been produced; the June 12th Order dealt with documents which had been produced albeit in redacted form.

Further, the argument that counsel "believed"[4] the complete document was in the ANDA, and counsel had offered to make the complete ANDA available on short notice on June 19th does not satisfy the Court's Order, which required that Amphastar ***produce*** unredacted copies of documents which had already been produced in redacted form. The ANDA contained an enormous number of documents, and it is beyond belief that having produced a copy of a particular document in redacted form, counsel for Amphastar would believe that telling plaintiffs' counsel to go look for the unredacted document in California in an enormous group of documents would be compliance with a directive to produce the documents in unredacted form.

The failure to produce the documents in unredacted form as required by the Court's June 12th Order constitutes disobedience of that Order. The imposition of sanction is fully justified.

---

[4] *See* #495 at 67.

C. *Alleged Failure to Produce the Amendments to the ANDA*

The June 27th Order required Amphastar to deliver to plaintiffs' counsel in Boston by July 5th "a complete copy of all amendments to the ANDA." The Order also made provisions for redactions if Amphastar sought them. What Amphastar produced were only transmittal letters of amendments to the FDA. It took (and still takes) the position that the transmittal letters were, in fact, the "amendments" and any other documents (including those transmitted) did not come within the definition of "amendments" as used in the Court's Order.

The case was stayed for about six months after the Federal Circuit's decision of August 7, 2012 to January 15, 2013. (##330, 344) After the stay was lifted, Judge Gorton ordered counsel to refile any motions which were pending at the time the stay was granted if counsel wished those motions decided. On March 25, 2013, plaintiffs' counsel refiled the instant motion. (#392) A hearing was held on April 4, 2013, and it was at that time the Court learned of the dispute as what constituted an "amendment" to the ANDA.

On April 10, 2013, the Court issued an Order which provided for production of all documents comprising an amendment including any documents which were transmitted under the previously disclosed transmittal

letters. The matter of sanctions was pretermitted so that all issues respecting discovery could be resolved and Judge Gorton would be in a position to decide the merits of the case. A hearing on the issue of sanctions was held on July 1, 2013, and the matter has been *sub judice* since then.

After review of the record, the Court rules that Amphastar's interpretation of what constitutes an "amendment" to the ANDA is flawed. The Court further rules that Amphastar's failure to produce anything more than the transmittal letters constitutes a disobedience of the June 27th Order.

At the June 27th hearing, an extensive colloquy ensued on the issue of "amendments" to the ANDA. The Court determined that counsel for the plaintiffs should be able to "...look at the full text of the amendments" and after looking at the full text of the amendments, plaintiffs' counsel would "..tell (counsel for Amphastar) what (amendments) he wants correspondence on." (#291 at 40) Counsel for Amphastar emphasized the point, stating "[t]o be clear, the amendment is the actual amendment; not the related correspondence." *Id.*

Amphastar's position that the transmittal letters constitute "amendments" much less the "full text of the amendments" makes no sense. In fact, in their

own papers filed in this case with respect to their opposition to plaintiffs' Rule 56(d) motion, they assert that they have produced "the cover pages to each amendment from which it is possible to determine the subject matter of the amendment...". (#374 at 17) The Court's Order required production of the amendments, not the "cover pages to each amendment from which it is possible to ascertain the subject matter of the amendment." *Id.* The Court takes that statement in the pleading as meaning that Amphastar's counsel deliberately rewrote the Court's Order. Disobedience of the Court's Order is manifest.

Further, at the April 13, 2013 hearing, the Court was shown Exhibits 7 and 10 to the Mauri depositions. (##515, 516) These were documents produced by Amphastar which contained more than the transmittal letter. It is perfectly clear to the Court that not only is the transmittal letter **not** the amendment, but also it is virtually impossible from a review of just the transmittal letter to determine what the subject matter of the amendment is.[5]

Lastly, Amphastar's own witness testified at his deposition that the "amendment" is different from the transmittal letter. Specifically, Alvin

---

[5] The only exception is that in Mauri deposition exhibit 7, it is stated the amendment further deals with a maximum fill volume, but it is clear that this is only part of the subject matter of the amendment addressed in the transmittal letter.

Campbell was deposed on July 24, 2012; he is the head of Amphastar's "regulatory affairs" office. In response to questioning by plaintiffs' counsel, Mr. Campbell clearly agreed that the "amendment" is a "...narrative with attached appendices." (#490, Exh. 10 at 50) Further, the results of a "study" conducted at the request of the FDA is "part of the amendment." *Id.* After a break called by Amphastar's counsel, Mr. Campbell changed his testimony stating "(t)he letter is the amendment." (#490, Exh. 10 at 54)

The Court rules that failing to disclose more than the transmittal letters *vis-a-vis* the amendments constituted disobedience of the Court's June 27th Order. The imposition of sanctions is fully justified.

### IV. *Appropriate Sanctions*

The Court rules that although Amphastar's violations of the Court's Orders were quite serious and possibly contumacious, they do not, in the circumstances of this case, rise to the level at which the sanctions listed in Rule 37(b)(2)(A), Fed. R. Civ. P. are appropriate. In the end, the Court does not see plaintiffs as having been substantially prejudiced in their presentation of their claims on account of Amphastar's disobedience of the Court's Orders. That is not to say there has been no effect; it is only to say that whatever the effect has been does

not rise to the level at which imposition of Rule 37(b)(2)(A) sanctions would be just.

That being said, there is no doubt that these violations of the Court's Orders caused the plaintiffs to expend resources to discover and investigate the violations and to press their motion for sanctions. Accordingly, the Court shall impose the sanction set forth in Rule 37(b)(2)(C), Fed. R. Civ. P., and order the defendant Amphastar "...to pay the reasonable expenses, including attorney's fees, caused by the failure." The Court does not find Amphastar's disobedience either to be "substantially justified" or that any "...other circumstances make an award of expenses unjust." Rule 37(b)(2)( C), Fed. R. Civ. P.

### VII. Order

It is ORDERED that Plaintiffs' Re-Filed Emergency Motion for a Finding of Contempt and Sanctions Against Defendants for their Willful Violation of Court Orders (#392) be, and the same hereby is, ALLOWED in part and otherwise DENIED.[6] Plaintiffs shall file affidavits and other documents supporting the amounts which they claim as expenses, including reasonable attorney's fees,

---

[6] Any objections to the Order must be filed within fourteen (14) days from today's date pursuant to Rule 72(a), Fed. R. Civ. P. Counsel shall receive copies of the within Memorandum and Order on today's date via CM/ECF.

caused by Amphastar's violation of the Court's June 12th and June 27th Orders (including the preparation and prosecution of the Motion, Etc. (#392)) ***on or before the close of business on Monday, December 23, 2013***. Amphastar may file its response as to amounts claimed ***on or before the close of business on January 10, 2014***.

/s/ *Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

December 5, 2013.