**United States District Court**
**District of Massachusetts**

```
───────────────────────────     )
                                )
MOMENTA PHARMACEUTICALS, INC.   )
and SANDOZ INC.,                )
                                )
          Plaintiffs,           )
                                )
          v.                    )     Civil Action No.
                                )     11-11681-NMG
AMPHASTAR PHARMACEUTICALS, INC.,)
INTERNATIONAL MEDICATION        )
SYSTEMS, LTD., ACTAVIS, INC. and)
WATSON PHARMA, INC.,            )
                                )
          Defendants.           )
───────────────────────────     )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This is a patent infringement case in which plaintiffs Momenta Pharmaceuticals, Inc. and Sandoz Inc. (collectively, "Momenta" or "plaintiffs") claim that defendants Amphastar Pharmaceuticals, Inc., International Medication Systems, Ltd., Actavis, Inc. and Watson Pharma, Inc. (collectively, "Amphastar" or "defendants") infringed their patent during the course of defendants' manufacture and sale of generic enoxaparin products.

The instant dispute concerns the amount of attorney's fees and costs that Amphastar is to pay Momenta in connection with the imposition of sanctions ordered by a magistrate judge and confirmed by a district judge pursuant to Fed. R. Civ. P. 37(b)(2)(C).  Pending before the Court is Momenta's submission

-1-

of attorney's fees and costs ("the fee submission").  For the following reasons, the Court will award Momenta $343,863 in fees and $8,522 in costs.[1]

I.  **Background**

   A.  **Facts and procedural history**

   In July, 2010, after receiving approval from the United States Food and Drug Administration ("the FDA"), Momenta began to market the first generic version of Lovenox (otherwise known as enoxaparin) in the United States.  Enoxaparin is an anticoagulant used to prevent blood clots.  Momenta is the assignee of the '886 patent, issued in August, 2009, which is directed at a set of manufacturing control processes that ensure that each batch of generic enoxaparin includes the individual sugar chains characteristic of Lovenox.

   Amphastar received FDA approval to market its generic enoxaparin product in September, 2011.  Momenta initiated this action two days later by filing a complaint alleging that Amphastar infringed the '886 patent by manufacturing generic enoxaparin for commercial sale using its patented methods.

   In October, 2011, this Court allowed Momenta's motion for injunctive relief by enjoining Amphastar from advertising, offering for sale or selling allegedly infringing enoxaparin

---

[1] In the interest of brevity, the Court will round off all monetary amounts to the nearest dollar and hours to the nearest tenth of an hour.

products.  That decision included the preliminary finding that
the safe harbor provision in 35 U.S.C. § 271(e)(1) did not
protect Amphastar's infringing activities because it used the
patented process to test products after it had already obtained
FDA approval, such that the use was not "reasonably related to
the development and submission of information" to the FDA.

The Federal Circuit vacated the grant of the preliminary
injunction in August, 2012 and found that this Court applied "an
unduly narrow interpretation" of the safe harbor provision.
Momenta Pharm., Inc. v. Amphastar Pharm, Inc., 686 F.3d 1348,
1349 (Fed. Cir. 2012)("Momenta I").  It explained that
Amphastar's post-approval use of the patented process to run
quality control tests on its products fell within the scope of
the safe harbor provision because its use generated information
for records that Amphastar needed for continued FDA approval.
Id. at 1357-61.  It clarified that:

> [T]he submissions are not routine submissions to the
> FDA, but instead are submissions that are required to
> maintain FDA approval . . . Amphastar is required by the
> FDA to use this test in order to ensure its enoxaparin
> is not adulterated.  This testing, which generates
> information for submission pursuant to the Food, Drug,
> and Cosmetic Act, therefore falls squarely within the
> scope of the safe harbor.

Id. at 1358, 1361 (internal citations and quotation marks
omitted).

Shortly thereafter, this Court stayed the case pending the completion of appellate proceedings and denied all outstanding motions without prejudice.  The Federal Circuit denied Momenta's petition for a hearing en banc in November, 2012.

This Court removed the stay in January, 2013 and Amphastar moved for summary judgment.  In March, 2013, the Court allowed Momenta to re-file a motion to compel the production of testing documents and a motion for sanctions, both of which had been denied without prejudice at the time of the stay.

The United States Supreme Court denied Momenta's petition for certiorari in June, 2013.  Shortly thereafter this Court entered summary judgment in Amphastar's favor, finding that its activities fell under the safe harbor provision and therefore did not infringe.  The Court entered final judgment on Momenta's infringement claims in January, 2014.

In November, 2015, the Federal Circuit vacated the grant of summary judgment with respect to that finding.  Momenta Pharm., Inc. v. Teva Pharm. USA Inc., 809 F.3d 610, 613 (Fed. Cir. 2015).[2]  The Federal Circuit held that Amphastar's post-approval use of the patented process to test its generic enoxaparin products was, in fact, a "routine" step in a commercial

---

[2] In that decision, the Federal Circuit addressed the findings of this Court in both the instant case, in which Momenta alleges that Amphastar infringed the '886 patent, and the companion case, in which Momenta alleged that Teva Pharmaceuticals USA Inc. infringed the '886 patent. Id.

production process and thus not "reasonably related to the
development and submission of information" to the FDA. Id. at
620.  In doing so, it found that:

> With the benefit of additional briefing in the current
> appeals, which reflects the full district court record
> developed by all parties after the preliminary
> injunction phase, we conclude Amphastar's submissions
> are appropriately characterized as "routine."

Id.  It also concluded that:

> Although Momenta I held that post-approval studies can
> fall within the § 271(e)(1) safe harbor, 686 F.3d at
> 1359, whether such uses are reasonably related to a
> § 271(e)(1) submission requires more critical analysis
> in the post-approval context.  The conclusion in Momenta
> I that Amphastar's commercial use of Momenta's patented
> method falls within the safe harbor of § 271(e)(1) would
> result in manifest injustice.

Id. at 621 (internal quotation marks omitted).

The Federal Circuit denied Amphastar's petition for a
hearing en banc in February, 2016.  Amphastar informed the Court
that it would file a petition for certiorari with the Supreme
Court on or before May 17, 2016.

In March, 2016, the parties informed this Court of an
outstanding issue in connection with a prior imposition of
sanctions by the magistrate judge upon defendants for violating
certain discovery-related orders.

**B.   The instant dispute**

In December, 2013, Magistrate Judge Robert B. Collings
imposed sanctions upon Amphastar after finding that it disobeyed

his June 12, 2012 order ("the June 12th order") and June 27,
2012 order ("the June 27th order") by failing to produce
1) documents concerning its testing of certain batches of
generic enoxaparin products, 2) unredacted copies of documents
previously produced in redacted form and 3) a complete copy of
all amendments to any Abbreviated New Drug Application ("ANDA")
filed by any defendant.  He concluded that sanctions were
warranted under Rule 37(b)(2)(C) and directed Momenta to submit

> affidavits and other documents supporting the amounts
> which they claim as expenses, including reasonable
> attorney's fees, caused by Amphastar's violation of the
> Court's June 12th and June 27th Orders (including the
> preparation and prosecution of the [re-filed motion for
> sanctions]) . . . .

Amphastar filed objections to the imposition of sanctions which
this Court overruled in January, 2014.

Momenta filed a fee submission in December, 2013 which
sought 1) $735,209 in fees for work caused by Amphastar's
violations of the June, 2012 orders, 2) $70,205 in fees for the
preparation of the fee submission and 3) $8,522 in costs caused
by those violations.  Momenta later informed the Court in
footnote 2 of its reply memorandum that there were "two minor
errors in the[] Fee Submission" which reduced the requested
award by $6,000.

Momenta now seeks $799,414 in fees and $8,522 in costs,
figures which Amphastar fervently contests.

## II. **Attorney's fees and costs**

### A. **Legal standard**

Rule 37 provides that a court

> must order the disobedient party, the attorney advising
> that party, or both to pay the reasonable expenses,
> including attorney's fees, caused by the failure [to
> obey a discovery order or produce a person for
> examination], unless the failure was substantially
> justified or other circumstances make an award of
> expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C). The party seeking fees and costs

has the burden of showing that the expenses claimed are

reasonable and traceable to the failures of the disobedient

party. Ins. Recovery Grp., Inc. v. Connolly, 95 F. Supp. 3d 73,

78-79 (D. Mass. 2015). A court can reduce the award requested

to the extent that "the documentation of hours is inadequate."

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

A court has extremely broad discretion to determine the

reasonable fees and costs to award to the entitled party.

Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992). Under the

lodestar method for calculating a reasonable fee, the court will

first multiply the number of hours reasonably expended on the

litigation by the reasonable hourly rate. Hensley, 461 U.S. at

433. The court may reduce the number of hours in order to

eliminate time that was "unreasonably, unnecessarily, or

inefficiently devoted to the case." Torres-Rivera v. O'Neill-

Cancel, 524 F.3d 331, 336 (1st Cir. 2008).

-7-

Although the lodestar figure represents the "presumptively reasonable fee", Lipsett, 975 F.2d at 937(citing Blum v. Stenson, 465 U.S. 886, 897 (1984)), the court may further reduce the lodestar based upon factors such as 1) the time and labor required, 2) the novelty or complexity of the issues, 3) the skill required, 4) the preclusion of other employment by the attorneys, 5) the customary fee, 6) the fixed or contingent nature of the fee, 7) the time limitations imposed by the client or circumstances, 8) the damages involved and results obtained, 9) attorney experience, reputation and ability, 10) the desirability of the case, 11) the nature and length of the client relationship and 12) the size of awards in similar cases. Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 n.3 (1st Cir. 1997)(adopting the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

**B.   Application**

Momenta seeks to recover $799,414 in fees and $8,522 in costs.  Amphastar asks the Court to deny Momenta all fees and costs in their entirety "because of the outrageousness of the[] request" or, in the alternative, to allow only $40,368 in fees and no costs and to exclude the remainder of the claimed expenses as unreasonable, excessive or duplicative.

Upon careful consideration of the submissions by the parties, the Court finds it reasonable to award Momenta $343,863 in fees and $8,522 in costs.

### 1.   Fees: Compensable time

To calculate the number of hours reasonably spent, courts must first determine the number of hours actually spent and deduct the number of hours which were "duplicative, unproductive, excessive, or otherwise unnecessary." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984).

### a.   Work "caused by" Amphastar's non-compliance

The December, 2013 order for sanctions instructed Momenta to submit documentation to support the claimed expenses "caused by" Amphastar's violations of the June, 2012 orders.

Momenta asserts that its attorneys engaged in 1,448.4 hours of work "caused by" Amphastar's violations of the June, 2012 orders.  Those hours of work were performed by five partner attorneys, two "of counsel" attorneys and six associate attorneys at the law firms of Choate, Hall & Stewart LLP ("Choate") and McDermott, Will & Emery LLP ("McDermott").

Specifically, it contends that Amphastar's non-compliance caused it to perform legal work in connection with

1)   its initial and re-filed motions to compel production of testing documents (Docket Nos. 225 and 390)("the testing motions") which sought production of the manufacturing test records at issue in its later motions for sanctions,

-9-

2)   its motion to compel responses to interrogatories
     (Docket No. 270)("the interrogatories motion") which
     sought information on those same test records,

3)   its motion to enforce the June 12th order (Docket No.
     275)("the motion to enforce"), its motion and re-filed
     motion for a finding of contempt and sanctions (Docket
     Nos. 295 and 392)("the motions for sanctions") and the
     July, 2013 hearing, all of which formed the basis of
     the eventual imposition of sanctions,

4)   its motion for discovery pursuant to Fed. R. Civ. P.
     56(d)(Docket No. 366)("the Rule 56(d) motion") which
     sought the same test records and ANDA materials at
     issue in its re-filed motion for sanctions,

5)   its inspection of the ANDA materials in California in
     April, 2013, given Amphastar's refusal to make those
     files available in Boston which expressly violated the
     June 27th order and forced Momenta's attorneys to
     inspect the ANDA documents before they could conduct a
     subsequent review in Boston,

6)   its motion for leave to amend its infringement
     contentions (Docket No. 456)("the motion to amend")
     which it filed in response to "the new documentation
     belatedly produced by Amphastar",

7)   other matters ("other matters") such as a) drafting a
     potential motion to compel the missing documents which
     was later incorporated in its reply memorandum in
     support of sanctions, b) reviewing the June 12th order
     and composing an e-mail in the course of assessing and
     discussing Amphastar's non-compliance and c) preparing
     for a status conference which "dealt primarily" with
     the Rule 56(d), testing and sanctions motions and

8)   its submission for fees and costs (Docket No.
     545)("the fee submission") which it filed as requested
     by the December, 2013 order for sanctions.

Momenta emphasizes that it excluded from the fee submission

charges for which it does not seek recovery because such work

was "so intertwined with other work that the Plaintiffs would

have done regardless". It regards its fee submission as "already substantially discount[ing] the fees and expenses" caused by the violations.

Momenta thus concludes that the legal work for which it seeks reimbursement was reasonable, necessary and caused by Amphastar's failure to comply with the June, 2012 orders.

Amphastar responds that only the work associated with the motion to enforce, motions for sanctions and fee submission were "caused by" its violations of the June, 2012 orders and thus recovery for any other category of work is unwarranted.

After a comprehensive review of the record, the Court finds that Momenta can properly recover for at least some portion of the work associated with the motion to enforce, motions for sanctions, Rule 56(d) motion, inspection of the ANDA materials, "other matters" and fee submission. The Court will address each category of claimed work <u>seriatim</u>.

Momenta cannot recover fees in connection with its testing motions which sought the production of all documents concerning "finished product testing, retesting or reevaluation of any kind" for sold, inventoried or destroyed batches of enoxaparin. It filed the original testing motion one month <u>before</u> the entry of the June, 2012 orders such that the work associated with that motion was not "caused by" Amphastar's violation of the orders. That work is unrecoverable. Momenta re-filed the testing motion

-11-

in March, 2013 in essentially the same form which suggests that the work incurred with respect to the re-filed motion is <u>de minimis</u> and unrecoverable.

Similarly, the legal work associated with the interrogatories motion will not be reimbursed because that motion was also filed before the entry of the June, 2012 orders. Momenta would have had to prosecute the interrogatories motion regardless of Amphastar's recalcitrant failure to comply with the June, 2012 orders.

Amphastar concedes that at least some portion of the work related to the motion to enforce, motions for sanctions and fee submission were caused by its non-compliance.

The Rule 56(d) motion, filed in January, 2013, sought production of documents requested in the motion for sanctions which, in turn, asked for the same documents referred to in the June 12th order and the December, 2013 order for sanctions. Amphastar's violation of the June 12th order thus caused Momenta to file the Rule 56(d) motion in continued pursuit of those documents.

Amphastar's non-compliance did not, however, cause Momenta to move to amend its infringement contentions in the manner contemplated by the December, 2013 order for sanctions.  If Amphastar had complied with the June, 2012 orders by producing the documents, Momenta would still have been compelled to amend

its infringement contentions thereafter.  The legal services that Momenta needed in connection with its motion to amend was, therefore, not "caused by" Amphastar's non-compliance.

With respect to "other matters", Amphastar's failure to produce the documents specified in the June, 2012 orders caused Momenta to draft a new motion to compel those documents, to assess the extent of Amphastar's non-compliance with the June 12th order and to prepare for a status conference during which Momenta elaborated on its allegations of Amphastar's non-compliance.  The legal work associated with such "other matters" is recoverable.

Finally, Amphastar's recalcitrance caused Momenta to travel to California to inspect the ANDA documents at Amphastar's offices.  The magistrate judge found in December, 2013 that 1) the June 27th order required Amphastar to deliver a complete copy of the ANDA amendments to Momenta's attorneys in Boston, 2) Amphastar produced only the transmittal letters to the amendments in reliance upon a nonsensical and "flawed . . . interpretation of what constitutes an 'amendment' to the ANDA", 3) Amphastar's attorneys "deliberately rewrote the Court's order" in adopting that interpretation and 4) sanctions were warranted because failing "to disclose more than the transmittal letters vis-à-vis the amendments constituted disobedience" of the June 27th order.

-13-

According to the April, 2013 order of the magistrate judge,

> [i]t is clear that the Court's Order of June 27, 2012, at least as to anything other than the ANDA itself, was ineffective due to the parties' differing views on what constitutes an "amendment" to the ANDA, the Court being unaware of those views at the time. In these circumstances, the Court sees no viable alternative but to require plaintiff[s'] counsel to inspect the so-called 78 volumes and to determine what, if anything, he seeks to have produced.

If Amphastar had timely produced the ANDA amendments as required by the June 27th order, Momenta would not have had to inspect the documents before conducting its substantive review in Boston. Amphastar's improper withholding of the ANDA amendments thus caused Momenta to conduct the inspection in California. Amphastar's arguments to the contrary are unavailing.

Accordingly, the Court will allow Momenta to recover at least some of the legal fees incurred with respect to the motion to enforce, motions for sanctions, Rule 56(d) motion, inspection in California, "other matters" and fee submission.

### b.   Deduction of fees

The Court will reduce the fees assessed for hours billed on work that was "duplicative, unproductive, excessive or otherwise unnecessary." Grendel's Den, 749 F.2d at 950.

### i.   Excessive or duplicative work

Amphastar contends that Momenta's attorneys at Choate spent an "extremely excessive, unavoidably duplicative, and wholly

-14-

unreasonable" number of hours in preparing and prosecuting their motions for sanctions.

Specifically, defendants assert that 79.5 of the 253.7 hours of work claimed by Momenta's attorneys at Choate in connection with those motions were "unnecessary" because the attorneys spent 1) 66.25 hours drafting reply memoranda that they ultimately did not file, 2) 10.5 hours in document review, 3) 1.7 hours of work during "the interim time period after the Court's hearing on the Re-Filed Sanctions motion but before the Court's Order" and 4) 1 hour assessing "Amphastar's compliance with the Court's June 27, 2012 order, [before] the date for compliance had [] passed".

The Court finds that the legal fees incurred by Momenta with respect to its motions for sanctions was excessive and that a reduction of those fees by 25% is reasonable.

### ii.   Clerical or administrative work

Amphastar seeks to exclude about 40 hours of work performed by a senior associate in reviewing and redacting client bills because "[c]lerical or administrative tasks cannot be billed at lawyer rates . . . even when a lawyer performs them", see Lipsett, 975 F.2d at 940.

Momenta responds that the disputed hours involved "tasks that had to be performed by a lawyer" such as 1) analyzing 300 pages of monthly invoices and time records in order to identify

-15-

hours of compensable work and 2) reviewing the records for

privilege.  Amphastar counters that "[a]pproximately 90% of the

300 pages are client bills" which should have required only a

few hours of review.

    The Court agrees with Momenta.  Examples of clerical or

administrative tasks include

> document preparation, organization, distribution, and
> copying; drafting emails and other correspondence; data
> collection; legal cite-checking; scheduling and
> logistical planning; filing court documents; factual
> research; and docket review and management.

AutoZone, 934 F. Supp. 2d at 353-54.  The Court is satisfied

that, in this case, the review of time records for compensable

activities and privileged information is not clerical or

administrative and is a task typically performed by licensed

attorneys.  There will be no deduction of hours of work as

clerical or administrative.

### iii.   Travel time

    Courts in the First Circuit Court of Appeals

> typically reduce by half any billed hours an attorney
> spent traveling instead of working on the case.

Hermida v. Archstone, 950 F. Supp. 2d 298, 311 (D. Mass.

2013)(collecting cases).  Here, three of Momenta's attorneys

from Choate recorded 48 hours of travel time in connection with

their trip to inspect ANDA documents at Amphastar's offices in

mid-April, 2013.  Although neither party has raised the issue, the Court will reduce the recorded travel time by one-half.

Attorney Michael E. Murawski ("Attorney Murawski") recorded 10.2 hours of time spent flying between Boston and California and commuting to and from Amphastar's offices.  His travel hours will be reduced by 5.1 hours.

Attorney Jessica Gan Lee ("Attorney Lee") recorded 21.6 hours of time spent flying and commuting to and from Amphastar's offices.  Her travel hours will be reduced by 10.8 hours.

Attorney Sophie F. Wang ("Attorney Wang") recorded 16.1 hours of time spent traveling to and from Amphastar's offices in California.  Her travel hours will be reduced by 8.1 hours.

The fee submission reported no other travel time with the exception of an entry by Attorney Thomas. P. Steindler ("Attorney Steindler") who, on July 1, 2013, "[p]repare[d] for and attend[ed] summary judgment hearing and sanctions hearing and return travel (5.0)".  Because Attorney Steindler does not specify the amount of time that he spent traveling, the Court will treat the entry as a block billed record subject to a 20% global reduction.  The Court will reduce his 5 hours of work by 1 hour.

Accordingly, the Court will deduct 1 hour of work performed by partner attorneys and 24 hours of work performed by associate attorneys to account for the travel time.

### iv.   Block billed entries

The term "block billing" refers to the time-keeping method of "itemiz[ing] several tasks within a single time entry rather than maintaining separate time entries for each task performed". RFF Family P'ship, LP v. Link Dev., LLC, 962 F. Supp. 2d 340, 343 (D. Mass. 2013).  Courts disfavor that method because it often requires them to "decipher" the time records. E.E.O.C. v. AutoZone, Inc., 934 F. Supp. 2d 342, 355 (D. Mass. 2013).

If the block billed records submitted by the moving party are "rife with questionable entries", courts have broad discretion to apply across-the-board global reductions to the fee requests. Id.(internal quotation marks omitted).  If those records are supported by contemporaneous time records and sufficiently detailed explanations of those records, however, then the use of block billing is "not unreasonable" and will not be reduced on that ground. RFF, 962 F. Supp. 2d at 343.

In its fee submission, Momenta presents monthly invoices for services performed by its attorneys from Choate and McDermott.  The invoices from Choate contain block billed entries describing the completed tasks, relevant communications and the purpose of memoranda drafted.  Those contemporaneous records and explanations would render the use of block billing "not unreasonable", see id., if Momenta had not also 1) redacted certain entries to exclude activities for which it does not seek

-18-

recovery and 2) reduced the hours recorded in each of those entries by an estimated, but unexplained, amount.

For example, on June 20, 2012, Attorney Murawksi recorded 5.4 hours of work for reviewing "discovery motions filed with the court concerning Amphastar's failure to answer discovery and produce documents" and performing a separate, unknown and redacted task.  In the "Hours" column, Murawski recorded 5.4 hours of work under which Momenta has since added a boxed notation of 2.0 hours.  Momenta does not explain the nature of the redacted activity in that record or its method of estimating 2.0 hours of claimed work and 3.4 hours of unclaimed work.

Many of the entries submitted by Momenta's attorneys from Choate contain similarly redacted activities and reduced hours. The Court lacks sufficient information to determine whether the hours in those entries were reasonably attributable to defendants' sanctionable conduct.  The Court therefore deems a 20% global reduction to the hours recorded by Choate attorneys reasonable. See Torres-Rivera, 524 F.3d at 340(affirming the reasonableness of a 15% global reduction for "generic" entries that the district court treated as block billed entries); AutoZone, 934 F. Supp. 2d at 355("Global reductions of fifteen to twenty percent have been fairly common penalties for block billing in this circuit."); Conservation Law Found., Inc. v.

Patrick, 767 F. Supp. 2d 244, 253 (D. Mass. 2011)(applying a 20% global reduction for block billed entries).

Accordingly, the fees incurred for hours expended by Momenta's attorneys from Choate will be globally reduced by 20%.

The Court will not, however, apply the global reduction to the hours recorded by Momenta's attorneys from McDermott because their block billed entries include contemporaneous records of the amount of time spent on each activity within each entry.

### 2.   Fees: Hourly rates

The moving party must demonstrate the reasonableness of its requested rates through evidence, such as affidavits from the reporting attorneys, that its rates are consistent with those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11.  Those prevailing market rates are "normally deemed to be reasonable". Id.  The moving party may present evidence of the prevailing market rates and the customary billing rates of the reporting attorneys. Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996).  The court, however, is not required to adopt any of those rates and can "rely upon its own knowledge of attorney's fees in its surrounding area" in determining the reasonable hourly rate. Id.

Momenta submits that it is reasonable for 1) its partner attorneys, i.e., Attorneys Robert S. Frank ("Attorney Frank"),

Jr., Daniel C. Winston and G. Mark Edgarton from Choate and Attorneys Steindler and Alison Nadel from McDermott, to charge between $450 and $1,000 per hour, 2) its "of counsel" attorneys, i.e., Attorneys Daniel Bucca and Sean O'Donnell from McDermott, to charge between $595 and $635 per hour and 3) its associate attorneys, i.e., Attorneys Lee, Murawski, Kara B. Coen, Wang, Diana T. Huang and Anna Rachel Dray-Siegel from Choate, to charge between $415 and $695 an hour.

It presents affidavits from Attorneys Frank and Steindler and declares that those hourly rates are the standard billing rates charged to its clients and are comparable to the rates billed by intellectual property and business litigation attorneys with similar experience, reputation and skill at peer firms.

Attorney Frank claims that the rates charged by the Choate attorneys are competitive with the rates charged by other major law firms with principal offices in Boston based upon the results of a survey conducted by an independent consulting firm in 2013 ("the 2013 survey").  He also suggests that the hourly rates at Choate are "in many instances [] lower than other Boston firms that have similar patent litigation practices."

Attorney Steindler proffers that the rates charged by the McDermott attorneys are "competitive with those charged by other

premier national firms operating in Boston" based upon
aggregated data from peer law firms.

Amphastar asks the Court to discredit Attorney Frank's
declarations that the Choate rates are competitive because the
2013 survey excluded data from comparable firms that operate in
Boston but have their principal offices elsewhere.  By relying
on the results from that survey, Amphastar alleges, Momenta
departs from the "prevailing market rate" standard and redefines
"community" to include only attorneys employed in Boston by law
firms with principal offices in Boston.

The Court is persuaded by Amphastar that Momenta relied
upon a survey that improperly excluded data from attorneys
employed in Boston by law firms without principal offices in
Boston.  The inquiry with respect to whether the requested rates
are reasonable focuses on the comparison between the requested
rates and those charged by similarly credentialed <u>attorneys</u>
performing similar services in the community.  Momenta's
analysis is under-inclusive because the 2013 survey places an
undue emphasis on the institutional character of the <u>law firms</u>
employing those attorneys.  Momenta thus has not shown that the
hourly rates charged by its attorneys at Choate are reasonable
and in line with the prevailing market rates.

Amphastar further contends that, based upon the results
from a survey by its own independent consulting firm, the

prevailing market rates for similarly experienced attorneys in
the community fall between 1) $491 and $780 for partner
attorneys, 2) $409 and $515 for "of counsel" attorneys and
3) $369 and $451 for associate attorneys.  The survey results
upon which it relies, however, are over-inclusive because they
include billing data from attorneys working in various practice
areas, which vary by hourly rate, rather than only from
attorneys who practice intellectual property law.

The Court will allow Momenta to recover fees based upon
reasonable hourly rates of 1) $800 for each of the five partner
attorneys from Choate and McDermott, 2) $600 for each of the two
"of counsel" attorneys from McDermott and 3) $475 for each of
the six associate attorneys from Choate.  Those hourly rates are
in line with those charged by similarly experienced patent
litigators in the Boston community. See WBIP, LLC v. Kohler Co.,
2014 WL 4471412, at *2 (D. Mass. Sept. 8, 2014)(finding as
"commensurate with [rates] charged by equally experienced patent
litigators in Boston" hourly rates between a) $600 and $735 for
a partner at the law firm of K&L Gates LLP who specialized in
intellectual property litigation, b) $580 and $650 for a counsel
attorney with about 15 years of experience in patent litigation
and c) $345 and $425 for an associate who specialized in
intellectual property litigation).

Accordingly, the lodestar figure is $343,863 as shown below:

| Attorneys | Reasonable Hours | Reasonable Rate | Reasonable Fees (Hours x Rate) |
|---|---|---|---|
| Choate partners | 121.3 | $800 | $97,040 |
| McDermott partners | 33.4 | $800 | $26,720 |
| McDermott of counsel | 24.6 | $600 | $14,760 |
| Choate associates | 432.3 | $475 | $205,343 |
|  | | Lodestar | $343,863 |

### 3.   Fees: Adjustments to the lodestar figure

Amphastar requests that the lodestar figure undergo a further reduction because 1) Momenta engaged in "wasteful litigation" by filing a

> barrage of discovery motions after the Court lifted the stay and after Amphastar filed its motion for summary judgment based on the Federal Circuit's decision . . . in August, 2012 [that] essentially rendered [its] discovery requests and Sanctions Motions superfluous[,]

2) Momenta opted not to inspect the ANDA materials in California in June, 2012 and instead waited until April, 2013 to conduct the inspection and thus 3) the requested award of over $800,000 is disproportionate to the results that Momenta obtained. Amphastar further contends that the requested award of over $800,000 is "unprecedented" in every circuit.

As discussed above, the legal work relating to the motion to enforce, motions for sanctions, Rule 56(d) motion, inspection

in California, "other matters" and fee submission was part of
Momenta's legitimate efforts to enforce the June, 2012 orders.
That litigation was caused by Amphastar's violations and was
neither wasteful nor superfluous.  The Federal Circuit decision
in August, 2012 did not excuse Amphastar's compliance with the
June, 2012 orders or preclude the imposition of sanctions upon
it for violating those orders.

Accordingly, the Court finds that an award of $343,863 of
legal fees incurred by Momenta in connection with the
sanctionable conduct of defendants is not disproportionate in
this action in which the damages may exceed $160 million.

### 4.  Costs

The Court will also award Momenta $8,522 in travel and
subsistence costs incurred by Attorneys Murawksi, Lee and Wang
in connection with their April, 2013 inspection of the ANDA
files in California.  Those costs were caused by Amphastar's
violations and reasonably incurred.  The Court makes that
finding in light of the April, 2013 order by the magistrate
judge concluding that Amphastar's non-compliance with the June
27th order left him with "no viable alternative but to require
plaintiff[s'] counsel to inspect" the ANDA materials in Boston
or California.  The magistrate judge forewarned counsel in the
order that

the Court retains the power to assess costs imposed in
complying with the Order, including plaintiff[s'] travel
and subsistence costs . . . [D]efendants may opt to
produce the documents at their counsel's office in
Boston . . . to avoid the possibility that they would
have to pay plaintiff[s'] counsel's costs.

Accordingly, the Court will award Momenta $8,522 in costs.

### ORDER

For the foregoing reasons, and in consideration of
plaintiffs' submission for fees and costs (Docket No. 545),
plaintiffs are awarded $343,863 in fees and $8,522 in costs.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 9, 2016