```
                    United States District Court
                      District of Massachusetts
 _____
                                    )
MOMENTA PHARMACEUTICALS, INC.       )
and SANDOZ INC.,                    )
                                    )
        Plaintiffs,                 )
                                    )
        v.                          )    Civil Action No.
                                    )    11-11681-NMG
AMPHASTAR PHARMACEUTICALS, INC.     )
and INTERNATIONAL MEDICATION        )
SYSTEMS, LTD.,                      )
                                    )
        Defendants.                 )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

In July, 2017, after a nine-day jury trial, a jury found that defendants Amphastar Pharmaceuticals, Inc. and International Medication Systems, Ltd. (collectively, "Amphastar" or "defendants") infringed the patent held by plaintiffs Momenta Pharmaceuticals, Inc. and Sandoz Inc. (collectively, "Momenta" or "plaintiffs") during the course of defendants' manufacture and sale of generic enoxaparin. The jury also found, however, that the infringed patent claims were invalid because they were not enabled and had inadequate written descriptions.

The instant dispute involves the surety bond posted by Momenta to cover Amphastar's damages arising from an October 7, 2011 Temporary Restraining Order and an October 28, 2011

preliminary injunction ("the injunctions"). Pending before the Court are (1) Amphastar's motion to enforce liability on the bonds (Docket No. 1151) and (2) Momenta's motion to defer consideration of defendants' motion to enforce liability on the bonds pending exhaustion of its appeal to the United States Court of Appeals for the Federal Circuit ("the Federal Circuit") (Docket No. 1162).

## I. Background

### A. The Patent and Infringing Procedures

Enoxaparin is an anticoagulant used to prevent blood clots. Momenta is the assignee of U.S. Patent No. 7,575,886 ("the '886 patent"), issued in August, 2009, which is directed at a set of manufacturing quality control processes that ensure that each batch of generic enoxaparin includes the individual sugar chains characteristic of Lovenox. The individual sugar chains are referred to in the patent as "a structural signature associated with the non naturally occurring sugar associated with peak 9" and have since been identified as 1,6-anhydro rings.

Amphastar received FDA approval to market its generic enoxaparin product in September, 2011. Two days later, Momenta filed a complaint alleging that Amphastar infringed its '886 patent by manufacturing generic enoxaparin for commercial sale using its patented method. Momenta alleged that three of Amphastar's manufacturing control procedures infringe the '886

patent: 1) the Disaccharide Building Block ("DBB") procedure, 2) the 15-25% procedure which Amphastar performed at the time of FDA approval of its generic version of enoxaparin ("the 15-25% procedure") and 3) the revised 15-25% procedure which it adopted after FDA approval ("the revised 15-25% procedure").

### B. Momenta's Non-Disclosure of the '886 Patent to the United States Pharmacopeia

The United States Pharmacopeia ("USP") is a scientific, standard-setting organization ("SSO"). Pursuant to the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 301 et seq., drugs sold in the United States must conform to USP National Formulary ("USP-NF") standards. In 2006, the USP began looking for a method to test compounds with 1,6-anhydro rings to incorporate into the enoxaparin monograph. Although Momenta had already applied for its '886 patent, in April, 2008, it began participating on the advisory panel that chose the 1,6-anhydro test method as Chapter <207> of the USP-NF ("USP <207>"). Specifically, Zachary Shriver, the inventor of the '886 patent, participated in the panel. Momenta did not disclose to the USP the '886 patent application.

Momenta and Dr. Shriver opposed the adoption of USP <207> and stated that, at least, alternative methods should be allowed. The USP ultimately approved USP <207> as the official test to determine whether enoxaparin conforms to the structure

in the USP monograph but also announced that manufacturers would be able to use alternative tests. In Amphastar's view, Momenta had a duty to disclose that its '886 patent would cover USP <207> and, because it did not, the equitable defenses of waiver and estoppel apply.

### C. Procedural History

In October, 2011, this Court enjoined Amphastar from advertising or selling allegedly infringing enoxaparin. That decision included a preliminary finding that the safe harbor provision in 35 U.S.C. § 271(e)(1) did not protect Amphastar's infringing activities. The Court's order enjoined Amphastar from advertising, offering for sale or selling in the United States any generic enoxaparin product alleged to infringe the '886 patent. As a condition for the injunctive relief, the Court required Momenta to post two surety bonds in the amounts of $50,000 and $100,000,000 for the temporary restraining order and the preliminary injunction, respectively. The Court subsequently denied two motions to stay or dissolve the preliminary injunction filed by Amphastar.

Amphastar filed an interlocutory appeal of the Court's order entering the preliminary injunction and in August, 2012, the Federal Circuit vacated the preliminary injunction and found that this Court applied "an unduly narrow interpretation" of the safe harbor provision. Momenta Pharm., Inc. v. Amphastar Pharm.,

Inc., 686 F.3d 1348, 1349 (Fed. Cir. 2012).  It explained that Amphastar's post-approval use of the patented process to run quality control tests fell within the scope of the safe harbor provision because it generated information for records that Amphastar needed for continued FDA approval. Id. at 1357-61.

In July, 2013, this Court entered summary judgment in Amphastar's favor finding that its activities were protected by the safe harbor provision and therefore did not infringe. During the pendency of that appeal, this Court considered a motion to enforce liability on the surety bonds and a motion to defer consideration of that motion pending exhaustion of appeals.  The Court determined that it was appropriate to defer consideration of the motion to enforce liability on the bonds. The Federal Circuit then vacated this Court's grant of summary judgment to Amphastar and held, in November, 2015, that the safe harbor provision did not apply to its infringing activities. Momenta Pharm., Inc. v. Teva Pharm. USA Inc., 809 F.3d 610, 613 (Fed. Cir. 2015).

In April, 2017, defendants moved for summary judgment of invalidity and non-infringement and plaintiffs cross-moved for summary judgment of dismissal of the equitable defenses of waiver and estoppel or, alternatively, a separate hearing on those defenses.  In June, 2017, this Court denied all three motions.  The nine-day jury trial in July, 2017 resulted in a

verdict as previously described. Post-trial briefing ensued and, in March, 2018 this Court entered final judgment. Plaintiffs have appealed to the Federal Circuit.

In March, 2018, Amphastar filed a motion to enforce liability on the bonds. In response, Momenta filed a motion to defer consideration of the motion to enforce pending exhaustion of appeals. Those motions are the subject of this memorandum.

## II. Motions with respect to Momenta's liability on the bonds

Momenta maintains that the bond motion will not be ripe for resolution by this Court until the Federal Circuit decides Momenta's appeal and, even if the issue is ripe, the Court should exercise its discretion and defer its consideration until the Federal Circuit resolves the matters currently on appeal. It also contends that it is entitled to conduct discovery on damages before it can be required to respond to Amphastar's bond motion.

### A. Motion to defer consideration

#### 1. Legal standard

The bond at issue in this case was provided pursuant to Fed. R. Civ. P. 65(c) which states, in relevant part, that

> [t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been <u>wrongfully</u> <u>enjoined</u> or restrained.

-6-

Fed. R. Civ. P. 65(c) (emphasis added). The United States Court of Appeals for the First Circuit has held that a party is wrongfully enjoined when it had the right to do all along what it was enjoined from doing. Global NAPs, Inc. v. Verizon New England, Inc., 489 F.3d 13, 22 (1st Cir. 2007).

Fed. R. Civ. P. 65.1, in turn, governs proceedings against a surety bond and provides that "[t]he surety's liability may be enforced on motion without an independent action." Fed. R. Civ. P. 65.1. The First Circuit has described Fed. R. Civ. P. 65.1 as providing a "summary procedure for the enforcement of liability against a surety." Id. at 20. Moreover, the surety requirement and the summary procedure for enforcing liability on the surety are generally understood to serve the purpose of

> assur[ing] the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured ....

Id. at 21 (quoting Continuum Co. v. Incepts, Inc., 873 F.2d 801, 803 (5th Cir. 1989)).

### 2. Application

Momenta suggests that the bond motion is not ripe for consideration because Momenta's appeal of the final judgment in this case is pending before Federal Circuit. It maintains that a decision by the Federal Circuit on the merits in favor of Momenta would mean that Amphastar was not "wrongfully enjoined"

-7-

in the first place. Momenta submits that the Federal Circuit is considering for the first time (1) whether the asserted claims of the '886 patent were enabled and (2) whether the claims have adequate written description support, issues that Momenta contends are relevant to determining whether Amphastar was wrongfully enjoined.

Amphastar responds that recovery of a bond after a trial on the merits and entry of final judgment is proper. It notes that this Court's decision to defer consideration of enforcement of the bond in 2014 reflected a different procedural posture. Amphastar maintains that there is no authority suggesting that exhaustion of appeals is necessary before the proper enforcement of liability on an injunction bond.

As was the case when this Court considered the issue four years ago, the parties agree that the controlling precedent is Global NAPs, Inc. v. Verizon New England, Inc., 489 F.3d 13 (1st Cir. 2007) but they disagree about its application to this case.

Global NAPs arose out of the failure of Global NAPs to make required payments to Verizon and Verizon's threats to terminate its services as a result. In 2005, following an initial merits appeal to the First Circuit, the district court entered a preliminary injunction, conditioned on the posting of a surety bond, to prevent Verizon from disconnecting services to Global NAPs until the court resolved the merits of the parties' claims.

Id. at 16.  The district court ultimately entered summary judgment against Global NAPs and later confirmed that the ruling on summary judgment dissolved the preliminary injunction.  Id.  It allowed a motion by Global NAPs for an injunction pending appeal, however, and Global NAPs posted an additional security.  Id. at 16-17.

In April, 2006, the First Circuit affirmed the district court's award of summary judgment to Verizon (Global NAPs II).  Id. at 17.  Shortly thereafter, the First Circuit vacated the injunction that had been entered pending appeal and later denied Global NAPs' motion to reconsider the motion to vacate the injunction.  Id.  On the same day the injunction was vacated, Verizon moved the district court to release the security.  Id. at 18.  One week later, the First Circuit denied Global NAPs' petition for rehearing and rehearing en banc.  Id. at 17 n.2.  In May, 2006, the First Circuit issued its mandate.  Id. at 18.  The district court allowed Verizon's motion the following day and released the full $16 million security to Verizon.  Global NAPs appealed both rulings.  Id.

On appeal, the First Circuit clarified that a party is wrongfully enjoined when "it had a right all along to do what it was enjoined from doing." Id. at 22.  In so ruling, it adopted the majority rule rejecting the argument that a party is wrongfully enjoined only if the court that entered the

injunction abused its discretion in doing so. Id. Applying that rule to the injunction at issue, the court found that

> the issue of whether Verizon was wrongfully enjoined was determined when we issued our opinion in [Global NAPs II] and rejected [Global NAPs'] arguments on the merits of its position. We then vacated the injunction because Verizon was entitled, and had been entitled all along, to cut off services to [Global NAPs].

Id. at 23 (emphasis added).

Momenta argues that Global NAPs held that a party is deemed to be "wrongfully enjoined" only when all issues relating to the merits of the case have been decided on appeal. It relies upon the First Circuit's statement that the issue of whether Verizon was wrongfully enjoined was

> determined when we issued our opinion in [Global NAPs II] and rejected [Global NAPs'] arguments on the merits of its position.

Id. at 23. Momenta contends that the posture of this appeal provides an even more vivid example of the need to defer consideration of the enforcement motion than when the Court did so in 2014 because the Federal Circuit has not yet considered the factual and legal questions presented by Momenta's appeal.

Amphastar responds that this Court has jurisdiction to consider its motion and that the Court's 2014 decision bolsters their argument. It contends that the 2014 decision was based on the posture of the case and that a final judgment after trial on the merits is very different than a summary judgment decision,

-10-

in part because the standard of review used by the Federal Circuit is different.  Apmhastar suggests that the application of Global NAPs should be limited here because in that case, the First Circuit was considering a security that was posted pending appeal, rather than a security posted prior to final judgment being entered in the case.

The Court agrees with Momenta that the Court is required to defer consideration of the enforcement motion pending the appeal to the Federal Circuit.  Momenta argues convincingly that the Federal Circuit has not yet decided whether the asserted claims of the '886 patent were enabled or whether those claims have adequate written decision support.  Although Amphastar is correct that the standard of review is different than the de novo summary judgment review standard that applied in the earlier appeal, the chance, however remote, that the Federal Circuit may decide the case differently makes enforcement of the bond premature.

The Court is not persuaded by Amphastar's argument that Global NAPs is distinguishable because the First Circuit was considering a security that was posted pending appeal. The court in that case considered two injunctions supported by separate bonds, one that was issued before final judgment and one issued pending appeal. Id. at 16-17.  The Rule 65(c) analysis is

unchanged by the fact that one of the two injunctions considered was issued pending appeal.

On these facts, because the Federal Circuit's decision on appeal may affect this Court's finding that Amphastar was "wrongfully enjoined", this Court declines to enforce the bond at this juncture. Id. at 23 ("The issue of whether Verizon was wrongfully enjoined was determined when we issued our opinion in GNAPs II and rejected GNAPs' arguments on the merits of its position.").

Moreover, even if this Court had jurisdiction over the bond motion at this time, it would defer consideration to the extent that it has the discretion to do so. See Pabst Brewing Co. v. Corrao, 999 F. Supp. 1242, 1243-44 (E.D. Wis. 1998) (declining to release surety as matter of discretion after final judgment in the case pending appeal to the Seventh Circuit Court of Appeals). Momenta has made a persuasive argument for limited discovery before being required to respond to Amphastar's bond motion. Given the albeit limited possibility that final judgment in this case could be reversed on appeal, which would obviate the need for discovery with respect to the bond issue, the Court will defer such consideration until the resolution of the appeal.

If the final judgment in this case is affirmed, this Court will enter an order addressing Momenta's request for additional

discovery and, if necessary, will set a discovery schedule and a date by which Momenta will be required to respond to Amphastar's bond motion.

### ORDER

In accordance with the foregoing,

1) Amphastar's motion to enforce liability on the bonds (Docket No. 1151) is **DENEID WITHOUT PREJUDICE** to its renewal after the appeal is resolved, and
2) Momenta's motion to defer consideration of motion to enforce liability on the bonds (Docket No. 1162) is **ALLOWED**.

In the event that the final judgment is affirmed, this Court will enter an order on Momenta's request for additional discovery, setting a discovery schedule and response date for opposition to the bond motion.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated July 13, 2018